IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANK OF AMERICA, N.A., | |
|       Plaintiff, | No. CIV S-07-1584 GEB EFB |
|   vs. | |
| HENSLEY PROPERTIES, L.P., | ORDER |
|       Defendant. | |
| AND RELATED COUNTERCLAIM | |

      This action was before the undersigned on June 25, 2008, for hearing on motions for protective and sealing orders filed by defendant and counterclaimant, Hensley Properties, L.P. ("Hensley"). Floyd W. Cranmore and Dennis Shore appeared as defense counsel, and Ryan J. Larsen appeared as plaintiff's counsel. Having considered the submitted papers and oral argument, the court denies defendant's motions except as provided below.

**I. BACKGROUND**

      This action arises from an alleged contract between Hensley and Bank of America, N.A. ("BOA"). In 2006, Cheryl Bright, Hensley's general partner and representative, met with BOA representatives in Modesto, California to explore refinancing loans on three of Hensley's properties. At the time, Hensley had mortgages on the properties through Bank of the West

1

("BOW"). BOW was threatening to call the mortgages due in light of the death of co-signor, Marjorie Bright. Cheryl Bright met with BOA representatives and signed a document entitled "Proposed Interest Rate Swap (Forward Rate Lock)" (referred to herein as the "Agreement").

However, after extensive negotiations between the respective counsel of BOW and Hensley, the terms of the BOW mortgages were renegotiated and BOW decided not to call them due. When Hensley informed BOA that it was no longer interested in going forward with the transaction, BOA took the position that the parties had entered into a binding agreement for an interest rate swap. Hensley disagreed, arguing that they had merely agreed to lock in a fixed interest rate during the loan application process for a potential, future loan. BOA then filed suit for breach of contract in the Southern District of New York, claiming it was entitled to a termination fee of approximately $1.8 million under the terms of the Agreement. Hensley filed counterclaims against BOA, alleging fraud and breach of duty.[1] The New York district court found the Agreement's forum selection clause unenforceable, and transferred the case to this district.

The pending discovery motions present unusual circumstances, as BOA has in its possession numerous documents regarding the financial condition of Hensley and Ms. Bright, personally, which it obtained during the loan application process. Hensley concedes the relevance of these documents based on its position that Ms. Bright is financially unsophisticated and did not understand the nature of the transaction with BOA. While Hensley does not seek to prevent BOA's access to such documents, it does seek to control its use of them. In particular, Hensley demands the right to designate any documents in BOA's possession as confidential, and seeks a "prophylactic" sealing order as to all such confidential documents. That is, it seeks an order that all confidential documents be filed, if at all, under seal and presented only during closed sessions of court. Hensley also seeks an order requiring advance notice of BOA's

---

[1] The district judge dismissed Hensley's fraud claim on December 28, 2007.

intention to file or otherwise disclose such documents. When BOA refused to agree to such terms in Hensley's proposed stipulated protective order, Hensley moved to have the court to endorse these terms by order. The court declines to do so, and instead issues a far narrower protective order as set forth below.

**II. DISCUSSION**

The main goal of Hensley's motion for protective order is to obtain a "prophylactic" sealing order as to any documents it designates "confidential." Accordingly, the court construes the motion as a motion to seal, and applies the appropriate standard for such a motion, as set forth below. To the extent the motion can be construed apart from the proposed sealing provisions (i.e., request for advance notice of BOA's filings and disclosures), the court discusses that issue separately below.

A. Applicable Standards

Pursuant to Fed. R. Civ. P. 26(c), it is within the court's discretion whether or not to issue a protective order. The moving party must first establish good cause for such an order. Fed. R. Civ. P. 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted. . . . Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 659 (C.D. Cal. 2005) (quoting *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) and *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)).

Two standards govern motions to seal documents, depending on the circumstances. *Pintos v. Pacific Creditors Ass'n*, 504 F.3d 792, 801 (9th Cir. 2007). As a preliminary matter, a "compelling reasons" standard applies to most judicial records. "This standard derives from the common law right to inspect and copy public records and documents, including judicial records and documents." *Id.* (internal citations and quotations omitted). "[A] party seeking to seal judicial records must show that compelling reasons supported by specific factual findings

1  outweigh the general history of access and the public policies favoring disclosure." *Id.* (internal
2  citations and quotations omitted).

3      The Ninth Circuit distinguishes between motions to seal documents attached to
4  dispositive versus non-dispositive motions.  "Those who seek to maintain the secrecy of
5  documents attached to dispositive motions must meet the high threshold of showing that
6  'compelling reasons' support secrecy.  A 'good cause' showing under Rule 26(c) will suffice to
7  keep sealed records attached to non-dispositive motions." *Kamakana v. City and County of*
8  *Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (citations omitted).  As part of this distinction,
9  the Court has noted that "private materials unearthed during discovery are not part of the judicial
10 record." *Pintos*, 504 F.3d at 801 (quoting *Kamakana*, 447 F.3d at 1180).  Rule 26(c)'s "good
11 cause" standard applies to such documents.  *Pintos*, 504 F.3d at 801.

12      Here, the "private materials" at issue are not "private materials unearthed during
13 discovery."  Rather, they are documents that were voluntarily handed over to BOA prior to the
14 litigation, and which have now become relevant by virtue of Hensley's defense and
15 counterclaims.   Indeed, Hensley does not dispute their relevance to rebutting Cheryl Bright's
16 claims of financial "unsophistication."

17      As set forth above, Hensley is not trying to deny BOA access to the "confidential"
18 documents (discussed in more detail below).  Rather, it seeks a prophylactic "blanket" sealing
19 order as to documents its designates confidential, and asks that such order apply for the
20 remainder of the litigation, including dispositive and non-dispositive motions, as well as hearings
21 and trial.  Given the breadth of restraint on the public's access to court records that ordinarily
22 ought to be in the public record that this request would occassion, the court applies the
23 "compelling reasons" standard.

24 ////
25 ////
26 ////

4

Under the "compelling reasons" standard, the Ninth Circuit instructs that

> the court must conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, *if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture*.
>
> In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. *The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records*.

*Kamakana*, 447 F.3d at 1179 (emphasis added) (internal quotations and citations omitted).

### B. Application of Compelling Reasons Standard

Here, Hensley proffers numerous reasons in support of its motion for a prophylactic sealing order. It identifies essentially three broad categories of documents – those containing third-party "identity" information, those containing third-party financial information, and those containing Hensley's trade secrets and private financial information.

Hensley argues that state law privacy interests and various other privileges protect this information from disclosure to the public, and more particularly, to estranged members of the Bright family. Hensley explains that, by way of background, it is a family-owned private business with extensive real estate holdings. It passed into the control of Cheryl Bright upon the death of the family matriarch, Marjorie Bright. Cheryl is married to Lyn Bright, Marjorie's son. Marjorie has two other children, Susan and Carol. *See* Declaration of Floyd Cranmore in Support of Motion for a Protective Order and Application for a Protective Seal Order ("Cranmore Decl."), ¶ 11, Exh. X thereto; Declaration of Cheryl Bright in Support of Motion for a Protective Order and Application for a Protective Seal Order ("Bright Decl."), ¶¶ 7-11. All three children are from Marjorie's marriage to Calvin, whom she divorced late in life. *See id.*

As Hensley explains, Marjorie essentially disinherited her children, partially because of serious in-fighting between them over control of the family businesses and assets. Marjorie felt that Cheryl was the only member of that generation whom she could trust to look after the business for the benefit of her grandchildren (Lyn & Cheryl's children). *See id.* The family has engaged in extensive litigation, both with regard to the disinheritance and other family business disputes. It has essentially split into two factions, with Lyn and Cheryl on one side, and Susan, Carol and their father, Calvin, on the other (collectively referred to in the briefing and herein as "Other Family"). *See id.* It appears that the most recent bout of litigation was resolved through a confidential settlement agreement, with Cheryl Bright retaining control of Hensley. *See* Exh. X to Cranmore Decl. (detailing disputes between Marjorie Bright's children and their various allegations against each other). Hensley asserts that disclosure of its (and Lyn and Cheryl's) financial information and "trade secrets" will result in, among other things, renewed in-fighting with the Other Family.

The asserted privileges, protections, and broad categories are addressed below.[2]

---

[2] The parties did not address the issue of whether California or New York "privilege" laws should apply to instant motions. While Hensley's assertions of privilege are somewhat vague, the court applies California's privacy laws. *Bible v. Rio Props., Inc.,* 246 F.R.D. 614, 617 (C.D. Cal. 2007) (in diversity cases federal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules); *Welles v. Turner Entm't Co.*, 488 F.3d 1178, 1187 (9th Cir. 2007) (same).

"[I]n analyzing a choice-of-law issue, California courts apply the so-called governmental interest analysis." *Castro v. Budget Rent-A-Car System, Inc*., 154 Cal. App. 4th 1162, 1179 (Cal. Ct. App. 2007). The court examines the governmental interests served by the applicable law of each jurisdiction to determine whether there is a "true conflict." *Id.* If a conflict exists, the court analyzes each jurisdiction's respective interests and decides which would be more severely impaired if its law were not applied in that particular case. The comparison "is about the relative commitment of the respective states to the laws involved." *Id*.

Here, it is unclear whether or not any "true conflict" exists because the parties have neither briefed the issue, nor do they dispute whether the various documents are "private" and subject to sealing. Indeed, plaintiff has agreed to abide by any sealing order the court issues. It merely opposes the terms of the order proposed by Hensley. Even if there were a conflict, the court applies California law in light of the state's enshrinement of the right of privacy in the constitution and its status as an evidentiary privilege in certain contexts (although subject to

6

Although the court recognizes the privacy interests at stake, it will not allow Hensley to litigate this case (and its countersuit) in secret. The prophylactic sealing order it seeks is too far-reaching and, in many respects, premature. Indeed, as set forth below, regardless of this order's provisions, the parties must still abide by Local Rule 39-141 every time they wish to file particular documents under seal.

### 1. Private Third Party "Identity" Information

Hensley seeks a prophylactic sealing order as to documents containing "identity information." In particular, they seek redaction of social security numbers, account numbers, and other third party "identity" information. Local Rule 39-140 requires redaction of social security numbers as well as identifying account information. Thus, no additional order is needed. Hensley also asks that the "rent rolls" from its various properties (i.e., documents containing its renters' "identity information") be filed, if at all, under seal. While it is doubtful that any such documents will be filed in connection with a dispositive motion or otherwise presented at any phase of the litigation, the court recognizes this as private, third-party information. The renters have no connection to this litigation and any information concerning their identities is irrelevant. Given California's strong interest in the privacy rights of individuals, weighed against such documents' irrelevance to the litigation, the court partially grants the defendant's motion with respect to the rent rolls. *See generally Davis v. Leal*, 43 F. Supp. 2d 1102 (E.D. Cal. 1999). That is, the court orders the parties to either redact the information or to apply for a sealing order in the event either decides to file this information in connection with a motion. The judge presiding over the motion will decide the sealing motion,

---

balancing). *See Condit v. Dunne*, 225 F.R.D. 100, 107 (S.D.N.Y. 2004) (comparing privacy laws in New York and California). While New York law recognizes a general right of privacy, it does not recognize an evidentiary privilege based on privacy as California does. *See id.; see also Davis v. Leal*, 43 F. Supp. 2d 1102, 1110-11 (E.D. Cal. 1999) (recognizing California's strong commitment to privacy rights). In the end, however, this analysis is somewhat of an aside, as Hensley has failed to demonstrate compelling reasons for a sealing order, even under the more favorable California law.

7

and Local Rule 39-141 shall apply.  The court declines to enter a "prophylactic sealing order."  Such an order cannot be decided outside the context of the relevant motion and this court does not presume to make orders regarding the submission of evidence to the district judge.  The motion is denied as to all other documents in this category.

### 2. Private Third-Party Information

Next, Hensley identifies several subcategories within this broad category of third-party, private financial information.  Hensley seeks an order that the following documents be filed, if at all, under seal (and that BOA give it advance notice of its intent to show any such documents to third parties):  family trust documents; inadvertently disclosed power of attorney/health care documents; the confidential settlement agreement between Bright family members regarding Marjorie Bright's estate; and, personal financial information regarding Lyn and Cheryl Bright (including tax returns, credit approval reports, balance sheets, and so on).

While such documents are normally accorded privacy protection under California law, Cheryl Bright has put her financial sophistication squarely at issue in this case.  Information about her private financial affairs is highly relevant to this issue, and she concedes this point.  Moreover, although Hensley has speculated that the Other Family may use this information to re-ignite the family feud, such fears are speculative.[3]

Nonetheless, taking notice of the acrimonious litigation between the Bright family, *see* Exh. X to Cranmore Decl., and the fact that it took years to resolve it, the court will accommodate the confidentiality of the family's settlement agreement, and accord it some protection.  *See Volkswagen of America, Inc. v. Superior Court*, 139 Cal. App. 4th 1481, 1495 (Cal. App. 1st Dist. 2006) (although settlement documents are not "privileged," courts will consider their relevance to the pending litigation in deciding whether or not to order disclosure).

---

[3] In an e-mail message filed by defense counsel following the June 25, 2008, hearing, the speculative nature of Hensley's arguments were reinforced.  In that e-mail, defense counsel intimated that the Brights believe that a kidnapping of their children or grandchildren ("à la Hearst") may result if their private financial information is published in court.

1  Here, the settlement agreement between members of the Bright family appears to have marginal
2  relevance to the contract dispute in the present action.  Accordingly, the parties are order to
3  either redact the confidential information or to apply for a sealing order in the event either
4  decides to file the confidential family settlement agreement in connection with a motion.  The
5  judge presiding over that motion will decide the sealing motion, and Local Rule 39-141 shall
6  apply.

7  With respect to the documents concerning the "power of attorney/end of life medical
8  decisions," the court sees little relevance to the present action, and doubts that BOA will publish
9  such documents with the court or to third parties.  Accordingly, the court orders BOA not to
10 disclose those documents to third parties, and to the extent it wishes to file them with a motion,
11 to first apply for a sealing order.  The same admonishments regarding Local Rule 39-141 apply.

12 Finally, the court addresses the matter of the Brights' tax returns, as well as Hensley's.
13 California law affords a very strong privilege from discovery of tax records.  *Davis*, 43 F. Supp.
14 2d at 1109 (citing *Schnabel v. Superior Court*, 5 Cal. 4th 704, 719-720 (1993)).  "The privilege
15 is waived or does not apply in three situations: (1) there is an intentional relinquishment, (2) the
16 gravamen of [the] lawsuit is so inconsistent with the continued assertion of the taxpayer's
17 privilege as to compel the conclusion that the privilege has in fact been waived, or (3) a public
18 policy greater than that of confidentiality of tax returns is involved."  *Id.* (citations omitted).

19 Here, while Hensley and the Brights voluntarily gave their tax returns to BOA, they have
20 not relinquished them for publication to the world at large.  Moreover, BOA already has these
21 records in its possession, and is not prejudiced by an order limiting their disclosure to other
22 persons.  Given the wealth of information about the Brights' and Hensley's financial condition,
23 an adequate record on the issue of "financial sophistication" can be created and litigated without
24 public disclosure of their tax returns.  Accordingly, recognizing the strong privacy rights
25 attached to tax returns, the court orders BOA not to disclose those documents to third parties,
26 and to the extent it wishes to file them with a motion, to first apply for a sealing order.  The same

1  admonishments regarding Local Rule 39-141 apply.

2  Defendant's motion with respect to this category of documents is denied in all other
3  respects.  However, the court enters a general protective order providing that BOA shall not use
4  or disclose any documents identified as confidential outside the context of this litigation.

5            3. <u>Hensley's Private Financial Information and "Trade Secrets"</u>

6  Hensley has identified several subcategories of documents within this broad category of
7  private financial information and so-called trade secrets.  Hensley seeks an order that the
8  following items be filed, if at all, under seal, and that plaintiff give it advance notice of its
9  intention to publicize them (either through filings or through use in the litigation):  Hensley's
10 Partnership Agreement, organizational charts, and e-mail messages between BOA and Hensley's
11 accountants; Hensley's financial information, including asset spreadsheets and consolidated
12 financial statements; BOA's financial analysis of Hensely, including a risk rating report and
13 scheduled exposure report, cash flow statements, credit approval report, and e-mail messages
14 regarding the same; financial statements for Hensley's various rental properties; BOA's financial
15 analysis of Hensley's properties, including information regarding occupancy rates; the check to
16 BOA for appraisals of those properties; Cheryl Bright's personal calendar from August 2008
17 containing "confidential medical and business information;" settlement agreement between
18 Hensley and BOW regarding renegotiated mortgages; and, BOA's October 27, 2006, settlement
19 demand letter to Hensley.

20 Hensley characterizes its financial information and rental property information as "trade
21 secrets" and argues that they should be sealed on that basis.  However, much of this information
22 is not "secret," as it was disclosed to BOA during the course of the mortgage negotiations.

23 While Fed. R. Civ. P. 26(c) specifically authorizes protective orders for trade secrets, the
24 party seeking to protect the information must show good cause for such an order.  The party
25 asserting the "trade secret privilege" has the initial burden of establishing the existence of the
26 privilege.  *Davis*, 43 F. Supp. 2d at 1110.  "A trade secret is not simply any material the

withholding party would rather keep confidential, but is: secret information essential to the continued operation of a business or industry [that] may be afforded some measure of protection against unnecessary disclosure." *Id*. (quoting Law Revision Comment to § 1060 (1995)) (emphasis added).

"Where a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position. That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of harm." *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 307-08 (N.D. Cal. 2005) (quoting *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987)).

While Hensley has argued that information about its properties' vacancy/occupancy rates, financial health, and so forth, are trade secrets which could be used by competitors to its detriment, it has not persuasively explained how such information is essential to its business, let alone how its disclosure could result in harm. Defendant explained at the hearing that Hensley's properties are in competition with rental properties held by the "Other Family," but was unable to explain, specifically, how disclosure of this information could be used to Hensley's detriment.[4] Such generalized speculation is insufficient to justify a sealing order, let alone a prophylactic one.

Likewise, with respect to the settlement agreement between BOW and Hensley, defendant fails to explain how it is a trade secret, and how, if it is confidential, it came to be in BOA's possession. Hensley has also failed to identify the harm that would result from its disclosure.

////

---

[4] At the hearing, defense counsel was unable to articulate how "Other Family" would use any of the identified information to harm Hensley. They merely intimated how sophisticated and intelligent Calvin Bright is, and pointed to continuing acrimony between the family members.

1 However, in light of the irrelevance of some of the other items (i.e., Cheryl Bright's
2 personal calendar and the check to BOA for appraisals of Hensley's properties), the court will
3 order the redaction of sensitive or account information contained therein, to the extent BOA does
4 file, or otherwise discloses, such documents during the litigation.  The court finds that Hensley
5 has otherwise failed to articulate compelling reasons, supported by facts (not hypothesis or
6 conjecture) sufficient to justify the far-reaching prophylactic sealing order it seeks.

               4.  <u>BOA's Purported Duty to Hensley</u>

8 Hensley also argues that by virtue of BOA's purported fiduciary duty to it as a client,
9 BOA is obliged to aid in preventing the disclosure of all the subject documents.

10 There is no "banker-client" privilege, although many courts recognize a bank's duty to
11 keep its clients' information confidential.  *See, e.g., Valley Bank of Nev. v. Superior Court*, 15
12 Cal. 3d 652, 658 (Cal. 1975) (noting that while there is no banker-client privilege, the state
13 constitution's right of privacy requires the bank to afford the customer a fair opportunity to
14 assert his interests before the bank discloses the information to a third party); *see also Young v.*
15 *United States Dep't of Justice*, 882 F.2d 633, 640-45 (2d Cir. 1989) (noting a general duty to
16 keep customer information confidential, but finding that there is no banker-client privilege nor a
17 cause of action for breach of confidence).

18 Most case law on this issue arises in the context of a bank's obligations to a client when a
19 third-party has subpoenaed the client's records.  Defendant has cited no law, and the court has
20 found none, requiring a bank to keep a client's information confidential when the two are
21 actively engaged in litigation against each other.  Indeed, the authority defendant cites in support
22 of its position about a bank's duties to preserve the confidentiality of its client's records
23 recognizes exceptions to that duty, including where "it is required in the bank's interest."  *See*
24 Joint Statement re: Discovery Disputes ("Joint Statement"), 9:27-10:18  (citing Schroeder, Law
25 & Reg. of Fin. Inst., ¶ 18.20[3][c]).  Here, it is in the Bank's interest to use the information
26 available to it to defend against the countersuit and rebut Hensley's assertions that Cheryl Bright

is financially unsophisticated. Based on the foregoing, the court finds that BOA has no duty to accede to Hensley's demands for a stipulated sealing/protective order.

### C. Protective Order

To the extent defendant's motion can be separately characterized as one for a protective order requiring plaintiff to give advance notice of documents it intends to file with motions or use during depositions, that motion is also denied.

Defendant's reason for seeking such an order is based primarily on speculative fears that the Other Family will somehow use the subject documents to reinitiate the family feuding, and to gain a competitive advantage against Hensley in the market where their rental properties are located. Again, defense counsel were unable to give concrete examples of how the information defendant seeks to protect could be used for either purpose. Accordingly, the court finds that "good cause" for the proposed order has not been shown, and therefore denies that portion of defendant's motion. However, the court recognizes the sensitivity of much of the identified information, and grants the motion in part, by ordering that all documents designated "confidential" by either party shall be used solely for purposes of the pending litigation. Further, the denial of defendant's motions is without prejudice.

### D. Sanctions

Both parties have requested sanctions in connection with these motions. Although the court finds that defendant's motions should be denied except as provided herein, it recognizes defendant's concerns. Because both parties' positions satisfy a threshold standard of substantial justification and the motion was denied only in part, the court finds that neither party is entitled to an award of fees. *See* Fed. R. Civ. P. 37(a)(5).

### III. CONCLUSION

In accordance with the foregoing, IT IS ORDERED that:

1. Hensley's motion for a protective and sealing order is denied, as specified above, without prejudice to filing of a renewed motion;

2. Hensley's motion is granted insofar as BOA is directed not to use or disclose the documents identified as confidential beyond the context of the litigation. Further, the parties must apply to file any tax returns, personal medical information, and rent rolls containing identity information of Hensley's renters, under seal, if at all; and,

3. All requests for sanctions are denied.

DATED: July 10, 2008.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE